IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) LOUIS NEIL RUCKMAN, )
)
Plaintiff, )
)
v. )  Case No. 17-CV-381-JHP-MJx
)
(1) THE CITY OF BARTLESVILLE OKLAHOMA, )
  a municipal corporation, )
(2) THOMAS R. HOLLAND, )
  individually and in his official )
  capacity, )
(3) DANIEL ELKINS, )
  individually, )
(4) CHRIS DUNN, )
  individually, )
)
Defendant(s). )

## COMPLAINT

**COMES NOW**, the Plaintiff Louis Neil Ruckman, by and through his attorneys of record, G. Gene Thompson, Esq., of Creek County Law, PLLC, and both Howard M. Berkson, Esq. and Cliff A. Stark, Esq. of Boston Avenue Law, PLLC, and files this Complaint, and for his causes of action against the Defendants, alleges and states the following, to-wit;

## PARTIES

1. Plaintiff, Louis Neil Ruckman ("Ruckman"), is a resident of Washington County, State of Oklahoma, which is located within the federal judicial district for the Northern District of Oklahoma.

2. Defendant, City of Bartlesville, Oklahoma was, and is at all relevant times hereto, a political subdivision of the State of Oklahoma, located in the federal judicial district for the Northern District of Oklahoma, and a municipal corporation pursuant to 11 O.S. § 22-10 *et. Seq.*

3. At all times, Defendant Thomas R. Holland ("Holland"), was the Police Chief of

the Bartlesville Police Department, and was a final policymaker for the City of Bartlesville, Oklahoma, for decisions and conduct regarding policies, customs, and conduct of the Police Department's officers. Holland is being sued in his individual and official capacities.

4. Defendants Daniel Elkins ("Elkins") and Chris Dunn ("Dunn") were, at all times material to this *Complaint*, duly appointed police officers for the City of Bartlesville, and thus acting under color of state law.

5. The facts giving rise to the incidents alleged herein occurred within the jurisdiction of the City of Bartlesville, which is located within the Northern District of Oklahoma.

6. Dunn and Elkins are being sued individually for their personal actions.

## JURISDICTION AND VENUE

7. This is a civil action seeking damages against Defendants the City of Bartlesville, Holland, Elkins, and Dunn for committing acts under color of law depriving Ruckman of his rights secured by the Constitution and Laws of the United States of America.

8. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of, and to redress, deprivations of rights secured by the Fourth Amendment and Fourteenth Amendment of the Constitution of the United States of America, as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights, and for the redress of deprivation of rights under the color of law.

9. The jurisdiction of the Court is further invoked under 28 U.S.C. § 1331.

10. Notice was properly given under the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 *et. Seq.* The events complained of herein occurred on or about November 19, 2015. Notice, as required 51 O.S. § 156 within one (1) year of the date of loss, was properly mailed to the agent for the City of Bartlesville on November 16, 2016.

11. The City of Bartlesville did not further acknowledge, or deny, said notice. Therefore, by operation of law under 51 O.S. § 157 ninety (90) days later, on or about February 16, 2016, deemed denial occurred. The GTCA provides that any state law cause of action therein must be brought by one-hundred and eighty (180) days following denial, or deemed denial, of the claim.

12. Therefore, this action being timely filed, and this Court having original jurisdiction over the claims and controversies herein, also has supplemental jurisdiction over the related state law tort and constitutional claims under 28 U.S.C. § 1367.

13. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events, or omissions giving rise to Plaintiff's claims occurred in the City of Bartlesville, Washington County, State of Oklahoma, which is in this District.

## FACTUAL ALLEGATIONS

14. In the late evening hours of November 19, 2015, Ruckman observed several individuals trespassing on land next to his home. Upon observing the trespassers, Ruckman made several phone calls to law enforcement dispatchers. During the course of each call he clearly stated, although he was calling from within the city limits of Bartlesville, the land on which the trespass was occurring was outside the city limits in unincorporated Washington County.

15. The dispatch center receiving the phone calls serves both the City of Bartlesville and Washington County. Despite Ruckman's request that county deputies be dispatched, Bartlesville police officers were sent.

16. The residence from the yard of which Ruckman was placing the calls is located at 1812 SW Hickory Ave., Bartlesville, Oklahoma. The home is located in the last block of SW Hickory Ave. at the dead-end of the street. This end of the street also demarks the boundary

between the City of Bartlesville and unincorporated portions of Washington County.

17. Ruckman was entrusted with the care of the property next to his house, the totality of which lies outside the City of Bartlesville. After several previous incidents where trespassers either ignored, or removed, the posted "no trespassing" signs to ride ATVs on the property, throw late night parties, dump trash, or undertake other malicious acts, the lessee provided him with written authorization to exclude trespassers from this property.

18. On the evening of November 19, 2015 Ruckman found several children riding dirt bikes on one of his routine visits to the property. He used his cell phone to call the non-emergency dispatch line for Washington County about the trespassers while he was still at the property. While Ruckman was on the phone with the dispatcher he could see the trespassers leaving the property. Based on this, he told the dispatcher no services, or officers, were necessary at that time.

19. Ruckman proceeded to walk back to his home as the phone call ended. As he reached his yard he encountered one (1) of the children's father, and three (3) of the Father's friends. All of the men were armed: one (1) wielded an aluminum baseball bat, and the rest presented large club-like sticks. They attempted to intimidate, provoke, and inflict fear in Ruckman that they were going to attack. The men stopped at the south edge of Ruckman's yard and told him the children could play wherever they wanted.

20. At this time Ruckman placed a second call to the non-emergency dispatch line. He told the dispatcher that he needed County Deputies to respond because of the armed men confronting him pertaining to property outside the city limits. The dispatcher asked if anyone had a firearm. Ruckman responded he did, that he was a concealed carry license holder, and therefore he was lawfully in possession of the pistol he was carrying.

21. The first officer to respond was Officer Daniel Elkins, of the Bartlesville Police

Department. On sight of the police cruiser the four (4) men discarded their weapons. Officer Elkins, upon getting out of his vehicle, ascertained who Ruckman was and told him the four (4) men would be dealt with after his firearm was secured in his house. Ruckman, without protestation, agreed to deposit the pistol in his house. He went into his home and secured the pistol.

22.     On returning to his yard, Ruckman found Elkins relaxed and petting his dog. Ruckman raised his shirt and jacket and rotated around for Elkins to see the pistol was no longer holstered, or on Ruckman's person. Once Elkins was satisfied Ruckman was unarmed, they began discussing the incident. Their calm discussion was abruptly interrupted by the arrival of Elkin's supervisor, Sergeant Chris Dunn of the Bartlesville Police.

23.     Upon his arrival, Dunn was tense, hostile, and rude. Dunn immediately demanded who had the pistol. Elkins explained to Dunn that Ruckman had secured the pistol in his home, Elkins had searched Ruckman, and was satisfied that he was unarmed at this time. Having established Ruckman was unarmed, Dunn immediately turned his attention to the fact that Ruckman's dog was present by ordering Ruckman to secure the animal.

24.     While securing the dog, Ruckman placed a third call to the non-emergency dispatcher. This time, sensing Dunn's hostility and tenseness, Ruckman thought it would be a good idea to have an Oklahoma Highway Patrol (OHP) State Trooper dispatched to the scene.

25.     Ruckman rejoined the officers, now on the street, and again began discussing the trespassers and how they threatened him. The temperature at the time of this discussion was in the thirties. During the course of this discussion, Ruckman placed both of his hands in the front pockets of his jacket. Ruckman made no sudden movements. He was standing there in a deliberately relaxed fashion, having a relaxed discussion with the Officers. Without warning, provocation, or notice, Dunn exclaimed "Get your hands out of your pockets." At the same time, without giving

Ruckman time to comply with Dunn's order, Dunn unreasonably, instantly, with no lawful purpose, and in violation of the United States and Oklahoma Constitutions, lunged forward in an apparent effort to tackle Ruckman.

26. Dunn's sudden lunge caused Ruckman to retreat backwards. However, in his hasty retreat, Ruckman fell down on the street. As Ruckman fell, his hands were caught in his jacket pockets. He was only able to get his left arm free while attempting to break his fall. Even so, Ruckman's head violently struck the pavement.

27. Dunn and Elkins instantaneously jumped on Ruckman. Elkins grabbed Ruckman's free left arm and Dunn grabbed for, and began tearing at, Ruckman's right arm that was still lodged in Ruckman's own right pocket. Dunn admitted in his report that he began kneeing Ruckman in the stomach when he failed to free Ruckman's entangled hand. Dunn further admitted to, at a minimum, striking Ruckman two (2) times in the face/head with a closed fist.

28. The officers then secured Ruckman in handcuffs. Once restrained in cuffs, the officers resumed their vicious beating of Ruckman before shoving him into the back seat of a patrol car. The beating and rough treatment of Ruckman had no lawful purpose, and the officers' treatment of Ruckman violated the United States and Oklahoma Constitutions. During this unprivileged, unconstitutional, use of force, the officers sarcastically asked of Ruckman "you won't be calling us again, will you?"

29. The State of Oklahoma charged Ruckman under a single misdemeanor case number, with one (1) count Obstructing an Officer, under 21 O.S. § 540, and one (1) count Resisting an Officer, under 21 O.S. § 268.

30. The misdemeanor case, inclusive of both counts, was dismissed with costs to State, at the prosecutor's discretion, after arraignment, but before trial.

31. Dunn and Elkins forwarded false and/or deceptive incident reports and a false/deceptive narrative to the District Attorney's office. Elkins and Dunn's materials did not accurately reflect the facts of the interaction between Ruckman and the officers.

32. Dunn's lunging at Ruckman without giving him time to comply was unreasonable and premature. On information and belief, and discovery is expected to further confirm, Dunn's actions were unreasonable under the circumstances, and his use of force was in violation of all material standards and protocol for the use of force.

33. It is further expected to be revealed through discovery that Dunn and Elkins used their position and influence as officers in the Bartlesville Police Department to secure criminal charges against Ruckman. Further, discovery is expected to show Dunn conspired with Elkins to produce false or misleading information to would be used to convict Ruckman of the criminal charges. Such conspiracy was calculated to set forth facts that would facially justify Dunn and Elkins' unlawful use of force.

34. Even if, as Dunn and Elkins claimed, Ruckman obstructed or resisted the officers during the course their duties, their use of force in response to Ruckman's alleged actions was unreasonable and excessive.

35. The beating administered by Dunn and Elkins was so severe that Ruckman began vomiting and exhibiting other symptoms of being concussed. Ruckman's vomiting and other concussion symptoms persisted even up to the time Ruckman arrived at jail.

36. Because of Dunn and Elkins' intentional and malicious actions toward Ruckman, he was arrested and taken to jail, his reputation in the community was damaged, he was criminally charged, and he experienced mental anguish as a result of facing the criminal charges that were backed by the officers' false/deceptive allegations. Ruckman was subjected to undue pain and

bodily harm as a result of the assault and battery perpetrated upon him by Dunn and Elkins.

37. Ruckman's employment as a security guard was terminated when his employer learned of the criminal charges stemming from Dunn and Elkins' false/misleading allegations.

38. Ruckman has further incurred substantial medical expenses, has and continues to suffer both mental and physical pain from the beating Dunn and Elkins inflicted on him, and he has also suffered, and continues to suffer, substantial loss of earnings.

### FIRST CLAIM FOR RELIEF
*Violations of Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 – Excessive Force against Dunn and Elkins*

39. Ruckman alleges and incorporates by reference Paragraphs numbered one (1) through thirty-eight (38), above, with the same force and effect as if fully set forth herein.

40. Dunn and Elkins at all times relevant hereto, were acting in their capacities as police officers for the City of Bartlesville, Oklahoma, under color of statutes, ordinances, customs, and usage of the City of Bartlesville and the Bartlesville Police Department.

41. Dunn intentionally violated Ruckman's right to be secure in his person in violation of the Fourth Amendment of the Constitution of the United States of America, as incorporated to the states by virtue of the Fourteenth Amendment. Dunn used excessive and unreasonable force against Ruckman by kneeing him in the abdomen at a minimum two (2) times, and striking him in the face with no less than two (2) closed fist punches, without warning, notice, or provocation. Judging from the perspective of a reasonable officer placed at the same, or a substantially similar, scene, and in light of the facts and circumstances confronting him, Dunn acted in an objectively unreasonable manner. The totality of the circumstances reveal that he lunged at, and tackled Ruckman contemporaneous with any command for him to cease and desist from any contact. This did not allow Ruckman any time to react or comply before being tackled and battered.

42. Dunn and Elkins were aware, and had confirmed, Ruckman's pistol was secured in his home. In light of that key fact, Ruckman's conduct of placing his hands in his coat pockets for warmth was not threatening, and he was not resisting arrest, or attempting to evade arrest by flight. Even if any of Ruckman's conduct could be described as criminal (which he adamantly denies), the severity of any accusation at issue was so minimal as to not be considered a basis for an objectively reasonable officer to use the level of force utilized by Dunn and Elkins. Further, continuing to batter Ruckman once he was secured in handcuffs shocks the conscious, and cannot feasibly be seen as reasonable under any circumstances. Dunn and Elkins engaged in their conduct intending to cause Ruckman great bodily harm. There was no immediate threat to the safety of either officer, or to others.

43. It is believed discovery will show Dunn and Elkins collaborated, conspired, and plotted to provide false information, in the form of their incident reports including a narrative of the events by both Officers, to prosecute Ruckman for the offenses of Obstructing an Officer, and Resisting an Officer. The arrest and unlawful detention of Ruckman, and the malicious charges placed against him intentionally, and with malice, deliberate indifference, and callous disregard of his rights, deprived Ruckman of his liberty without due process of law. Thereby, depriving him of his rights and privileges as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, as protected by 42 U.S.C. § 1983.

44. Elkins used excessive and unreasonable force against Ruckman by joining Dunn in beating him while he was restrained in handcuffs. This battering occurred without warning, notice, or provocation. Ruckman was overcome by force when Dunn lunged on him, and once standing again and shackled with handcuffs, Dunn and Elkins took the opportunity to administer additional cheap shots by further beating him. A reasonable officer on the scene, in light of the facts and

circumstances confronting them, could not have used the level of force used by Dunn and Elkins because Ruckman was restrained and unarmed. When Ruckman was restrained by handcuffs, his behavior was not threatening to either officer or to any other person. Ruckman was not resisting arrest, or attempting to flee. Ruckman's conduct cannot be reasonably described as criminal, and cannot be considered as a basis for an objectively reasonable officer to use the level of force that Elkins utilized. Elkins' conduct was objectively unreasonable for a police officer under the totality of the circumstances. Ruckman suffered physical injuries requiring medical attention as a result of the intentional, unlawful, excessive, and unreasonable force used by Elkins.

45. The intentional actions of Defendants Dunn and Elkins resulted in harm to Ruckman that was a foreseeable result of their malicious, willful, and intentional acts. Their intentional actions were all in reckless disregard for, and deliberately indifferent to, Ruckman's constitutional rights.

46. As a direct and proximate result of Dunn and Elkins' actions, Ruckman suffered severe and extreme pain and suffering, in the past, in the present, and apparently to continue into the future. This matter caused severe strain on his life. His reputation in the community, along with career prospects have been substantially compromised due to the actions of the Defendants.

47. Ruckman demands judgment against Dunn and Elkins jointly and severally, for actual, compensatory, and all other categories of damages in the amount of $500,000.00.

**SECOND CLAIM FOR RELIEF**
*42 U.S.C. § 1983 Municipal Liability against City of Bartlesville*

48. Ruckman alleges and incorporates by reference Paragraphs numbered one (1) through forty-seven (47), above, with the same force and effect as if fully set forth herein.

49. Dunn and Elkins, at all times relevant hereto, were acting in their capacities as police officers in and for the City of Bartlesville, under color of statutes, ordinances, customs, and

usage, of the City of Bartlesville and the Bartlesville police department.

50. The following informal customs or practices, among others that will be developed in discovery, are so persistent and widespread that they are standard operating procedure for the City of Bartlesville's police force:

   a. Officers using extreme physical force, including closed fist punching and kicking/kneeing the abdomen of suspects without warning or commands being given, to obtain compliance with a suspect, or not allowing time for compliance were a command is given;

   b. Officers using false, misleading, or deceptive information when excessive force has been used to justify and cover their actions;

   c. Officers detaining suspects under false pretenses;

   d. Officers using painful compliance techniques, or outright force, against restrained suspects who pose no immediate, or potential threat to officers, others, or themselves;

   e. Tolerating Officers who use unreasonable and excessive force against a subject or suspect;

   f. Tolerating Officers who provide false, misleading, or deceptive statements, or testimony, designed to inculpate and convict innocent defendants of crimes;

   g. Officers failing to properly secure a scene or suspect.

51. There is an affirmative link between the aforementioned acts and omissions of Defendants and the informal customs, or practices, or the City of Bartlesville. The Customs or practices are the direct cause in fact of Plaintiff's constitutional injury.

52. Further, the City of Bartlesville is responsible for the adequate training and

supervision of Dunn and Elkins, as Bartlesville Police Officers, as well as providing adequate training and supervision of multiple other officers of their force who have participated, conspired, and acted in concert in causing the above complained of constitutional deprivations suffered by Plaintiff and others. The training for preservation of Constitutional protections, and on excessive force, are designed to protect the Constitutional rights of citizens while in performance of police duties. Supervision allows for oversight and correction of constitutionally infirm behavior and practices. The City of Bartlesville has failed to adequately train, and/or supervise its officers relating to the use of force and on Fourth Amendment protections, as incorporated and afforded to citizens under the Constitution of the United States of America. There is a clear, and obvious, need to adequately train and supervise both uniformed and supervising Officers to assuage such obvious consequences of Fourth and Fourteenth Amendment violations.

53. This complained-of failure to train Dunn and Elkins in the proper use of force, securing a scene, and basic Fourth Amendment principles set in motion the events resulting in Ruckman's deprivation of Constitutional Rights. The failure, by the Bartlesville Police Department, to provide adequate oversight, supervision, and discipline for offensive and odious conduct is further affirmatively linked to Ruckman's constitutional injuries and damages.

54. The City of Bartlesville, the Bartlesville Police Department, and its final policymaker, Police Chief Thomas R. Holland, knew or should have known with substantial certainty that constitutional violations like those suffered by Ruckman would be the obvious result of the maintenance of the aforementioned actions, inactions, and/or omissions. The City of Bartlesville, and Holland, consciously chose to disregard that glaring risk.

55. Poorly trained and improperly supervised officers empowered with the freedom to use excessive force presents a known and obvious risk of abuse of power, leading to violence

against the population of the City of Bartlesville. The blatant disregard of the known and obvious risks of the same, to citizens such as Ruckman, were disregarded by the City and its final policymaker, Holland.

56. Dunn and Elkins acted in accordance with the above mentioned formal policies and/or informal widespread customs of the Bartlesville Police Department. Ruckman's damages were proximately caused by Dunn and Elkins' improper and/or inadequate training and supervision, and/or their improper retention.

57. Dunn and Elkins conspired, and acted in concert, throughout their actions described in this Complaint. The City of Bartlesville, and its final policymaker, Holland, enabled and allowed this conspiracy through their continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, and lack of training and/or supervision, in spite of known inadequacies and unlawfulness. Therefore, each, and collectively, were deliberately indifferent to the valuable Constitutional rights of citizens such as Ruckman.

58. Specifically, Dunn and Elkins brutally assaulted and battered Ruckman without giving him time to comply with any order, or command given. Further, they used excessive and undue force in restraining Ruckman and continued to beat him even after he was placed in handcuffs. As a result of these unlawful, and tortious, acts Elkins and Ruckman conspired and agreed to deny, falsify, lie, or simply remain silent about the surrounding Constitutional violations against the rights of Ruckman. These officers acted in accordance with the above-mentioned official formal policies, and/or widespread customs of the Bartlesville Police Department, and/or as a result of their inadequate training and/or supervision, and in doing so, proximately caused the damages incurred by Ruckman. Their actions were further ratified by the final policymaker of the Bartlesville Police Department, Chief Holland.

59. As a direct and proximate result of the City of Bartlesville's actions, Ruckman suffered extreme pain and suffering, in the past, in the present, and is expected to continue to experience the same in the future. This matter caused severe strain on Ruckman's life. His reputation in the community and career prospects have been substantially compromised due to the actions of the City of Bartlesville.

60. Ruckman demands judgment against the City of Bartlesville, Elkins, and Dunn, jointly and severally, for compensatory damages in the amount of $500,000.00.

### THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1983 Supervisory Liability against Chief Holland*

61. Ruckman alleges and incorporates by reference Paragraphs numbered one (1) through sixty (60), above, with the same force and effect as if fully set forth herein.

62. Police Chief Thomas R. Holland breached a duty to Ruckman, which was the proximate cause of his injuries. Specifically Holland personally involved himself in the Constitutional violations perpetrated against Ruckman by participating in the creation of flawed training protocols, and acknowledged tolerance of numerous Constitutionally infirm activities of his subordinate officers, including:

   a. Officers using extreme physical force, including closed fist punching and kicking/kneeing the abdomen of suspects without warning or commands being given, to obtain compliance with a suspect, or not allowing time for compliance were a command is given;

   b. Officers using false, misleading, or deceptive information when excessive force has been used to justify and cover their actions;

   c. Officers detaining suspects under false pretenses;

   d. Officers using painful compliance techniques, or outright force, against

restrained suspects who pose no immediate, or potential threat to officers, others, or themselves;

e. Tolerating Officers who use unreasonable and excessive force against a subject or suspect;

f. Tolerating Officers who provide false, misleading, or deceptive statements, or testimony, designed to inculpate and convict innocent defendants of crimes;

g. Officers failing to properly secure a scene or suspect.

Additionally, Holland exercised control, and discretion, over these Officers' activities, and other Officers like these who committed prior instances of excessive force against similarly situated citizens. Holland failed to properly discipline and supervise Officers that engaged in excessive, deadly, or violent force against non-threatening suspects. Holland knew of these violations of citizen's Constitutional rights, and acquiesced in their continuance.

63. Holland promulgated, created, implemented, and/or utilized policies that caused the deprivation of Ruckman's Constitutional rights. Holland knew, and/or should have known, it was obvious the maintenance of the aforementioned formal policies, practices, and/or widespread customs, as well as the failure to train and properly supervise Officers would result in Constitutional violations such as those suffered by Ruckman. The Constitution mandates that Holland, in a supervisory role over all officers, promulgate, create, and/or maintain a series of rules and procedures designed to prevent Ruckman's unconstitutional injuries. In his supervisory role, Holland also failed to promulgate, create, or maintain these rules, or procedures, despite repeated cases of excessive force, and questionable officer use of force incidents in the Bartlesville Police Department, and specifically conduct by Dunn and Elkins.

64. Poorly trained and improperly supervised officers, empowered to use unreasonable

amounts of force, presents a known and obvious risk of abuse of power and violence to the population of the City of Bartlesville. Holland disregarded the known and obvious risks to citizens like Ruckman and acquiesced, enabled, and ratified the continued malicious prosecution of Ruckman after the incident wherein Holland's officers savagely beat Ruckman. Holland knew that his continued acquiescence would result in unlawful detention, harm, and possibly unlawful jail sentences imposed upon Ruckman due to his Officer's conduct.

65. Dunn and Elkins acted in accordance with the above mentioned rules and procedures from Holland. Additionally or alternatively, the officers' complained-of conduct was a result of their failure to be trained, supervised, or dismissed, and in so doing, Holland proximately caused the damages incurred by Ruckman.

66. Dunn and Elkins conspired and acted in concert throughout the actions described in this complaint. Holland enabled, acquiesced, and allowed this conspiracy through their continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, and/or lack of training and/or supervision. In spite of the known inadequacies, and unlawfulness, Elkins, Dunn, and Holland were each, and collectively, deliberately indifferent to the valuable Constitutional rights of individuals like Ruckman.

67. As a direct, and proximate, result of Holland's actions, Ruckman has suffered extreme pain and suffering, in the past, in the present, and is expected to continue to experience the same in the future. This matter caused severe strain on Ruckman's life. His reputation in the community and career prospects have been substantially compromised due to the actions of Holland.

68. Ruckman demands judgment against Holland for compensatory damages in the amount of $500,000.00.

### FOURTH CLAIM FOR RELIEF
*Negligent hiring, training, and supervision – City of Bartlesville*

69. Ruckman alleges and incorporates by reference Paragraphs numbered one (1) through sixty-eight (68), above, with the same force and effect as fully set forth herein.

70. Upon information and belief, Dunn and Elkins were known by the City of Bartlesville and Holland to have been undertrained, lacking in proper experience, or incapable of handling the duties of a police officer. Despite knowledge of substantial defects in each candidate, the City of Bartlesville hired both officers, and allowed them to serve empowered with all the necessary powers of a police officer. These duties enabled the officers to arrest citizens and in the proper circumstance use reasonable force against citizens. These responsibilities require extremely careful consideration. After hiring, the city of Bartlesville knew that both Dunn and Elkins required training in order to be allowed to perform their duties in a Constitutional manner.

71. After hiring, the City of Bartlesville knew, or should have known, Dunn and Elkins had a propensity to be involved in excessive force incidents, and were in desperate need of training, supervision, or needed to be fired for lack of discretion in their respective uses of force.

72. The City of Bartlesville was further negligent in its hiring, training, supervision, and retention of dispatchers. The City had a policy, procedure, or widespread custom of allowing excessive discretion in selecting responders in situations such as those included in this Complaint. Further, the policy, procedures, or widespread customs allowed excessive discretion to dispatchers on how to identify the appropriate responder when law-enforcement officers have failed to remedy the complained of a situation on previous occasions or on the same occasion in prior dispatches.

73. The City of Bartlesville owed a duty of care to Ruckman not to subject him to its employees who would negligently, recklessly, or intentionally cause him physical harm.

74. The City of Bartlesville breached its duty of care to Ruckman when it hired Dunn

and Elkins, knowing of their deficiencies, and yet failing to train or properly supervise them after said deficient hiring. After the injuries to Ruckman, the City of Bartlesville negligently retained Dunn and Elkins.

75. The City of Bartlesville further breached its duty of Care to Ruckman when it failed to train or properly supervise its dispatcher, and/or allowed them excessive discretion in determining appropriate responders.

76. The actions, inactions, and omissions of the City of Bartlesville were the direct, and proximate, cause of the injuries sustained by Ruckman.

77. As a direct and proximate result of the City of Bartlesville's actions, Ruckman has suffered extreme pain and suffering, in the past, in the present, and is expected to continue to experience the same in the future. This matter caused severe strain on Ruckman's life. His reputation in the community and career prospects have been substantially compromised due to the actions of the City of Bartlesville.

78. The damages caused by the City of Bartlesville's negligent hiring, training, and supervision are $175,000.00

### FIFTH CLAIM FOR RELIEF
*Excessive Force - Oklahoma Constitution – Article 2, Section 30 against Dunn and Elkins*

79. Ruckman alleges and incorporates by reference Paragraphs numbered one (1) through seventy-eight (78), above, with the same force and effect as if fully set forth herein.

80. The above-referenced use of unnecessary and unjustified force by Defendants Dunn and Elkins is in direct violation of Article 2, § 30 of the Oklahoma Constitution, which guarantees the right of the people to be free from unreasonable seizures.

81. The violations of Plaintiff's constitutional rights pursuant to Article 2, § 30 of the Oklahoma Constitution occurred as a direct and proximate cause of the acts of Defendants Dunn

and Elkins while they were acting under color of law while employed by the Bartlesville Police Department.

82. As a direct, and proximate, result of the City of Bartlesville, Holland, Elkins, and Dunn's actions, Ruckman has suffered extreme pain and suffering, in the past, in the present, and is expected to continue to experience the same in the future. This matter caused severe strain on Ruckman's life. His reputation in the community and career prospects have been substantially compromised due to their actions.

83. The damages caused by the violation of Ruckman's rights under Article 2, § 30 of the Oklahoma Constitution are $175,000.00.

**WHEREFORE**, based on the foregoing, Ruckman prays for a judgment in excess of $2,000,000.00 against these Defendants for compensatory damages, punitive damages, reasonable attorney's fees, costs of this action, and for all other relief allowable according to law.

DATE:       June 29, 2017

Respectfully Submitted,
Creek County Law, PLLC

/s/ G. Gene Thompson
G. Gene Thompson, Esq.
OBA # 31243
101 E. Lee Ave.
Sapulpa, OK 74103
Tel: 918-223-3044
Facsimile: 918-998-0344
gene@creekcountylaw.com

~and~

Boston Avenue Law, PLLC

/s/ Howard Michael Berkson
Howard Michael Berkson, Esq.
OBA # 31482
Cliff A. Stark, Esq.
OBA # 10973
401 S. Boston
Suite 500
Tulsa, OK 74103
Tel: 539-777-1287
Facsimile: 405-509-7100
howard@bostonavenuelaw.com
cliff@bostonavenuelaw.com
**ATTORNEYS FOR PLAINTIFF**

ATTORNEY'S LIEN CLAIMED

JURY TRIAL DEMANDED